# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VIDAL RAINEY, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 16-CV-3936 |
| | ) |
| LIEUTENANT SHERRI ENGLISH (f/k/a SHERRI DUNMARS), and OFFICER LORIENT STANBACK, | ) Judge John J. Tharp, Jr.<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Vidal Rainey contends that Lieutenant Sherri English and Correctional Officer Lorient Stanback (collectively, "the defendants") beat him up when moving him between prison cells on November 6 and 22, 2014, and disregarded his serious medical needs after each attack. Rainey moves for summary judgment on his excessive force claims, and the defendants move for summary judgment on his deliberate indifference claims. But the parties dispute the foundational fact at the core of this lawsuit: whether the defendants (or other correctional officers in the defendants' presence) assaulted Rainey. Rainey's motion for partial summary judgment [99] is therefore denied, and the defendants' motion for partial summary judgment [100] is denied as to the claims that the defendants were deliberately indifferent to Rainey's medical needs following the alleged November 6 assault, and as to the claim that English was deliberately indifferent to his medical needs following the alleged November 22 assault. But because Rainey has not pointed to any evidence suggesting that Stanback was aware that Rainey was assaulted on November 22, the defendants' motion is granted as to the claim that Stanback was deliberately indifferent to Rainey's medical needs following the alleged November 22 assault.

## BACKGROUND

During November 2014, Rainey was an inmate at the Stateville Northern Reception Center, where English was a lieutenant and Stanback was a corrections officer. On or around November 6, 2014, English and Stanback arrived at Rainey's cell at approximately 2:45 p.m. to handcuff him and move him to a segregation unit.

English and Stanback testified that they placed Rainey in handcuffs and moved him to the segregation unit without incident and without using force. English claims that she did not enter Rainey's cell, that there were "no issues" during the move, and that she did not punch or kick him during this incident or at any other time. Stanback also claims he did not enter Rainey's cell and denies ever using any force against him.

Rainey's account of events stands in stark contrast to the accounts of English and Stanback. According to Rainey, when English told him on November 6 that he needed to handcuff him to move him to segregation, Rainey asked for time to finish using the toilet. English refused Rainey's request and requested the assistance of Stanback and another correctional officer, Officer Holyfield, in removing Rainey from his cell. Stanback and Holyfield grabbed Rainey by his shoulder and shirt before he was done using the toilet, causing him to fall on the floor onto his left shoulder. Stanback, English, and Holyfield then punched and kicked him all over his body and head until he was removed from his cell. Once Rainey was outside of his cell, Stanback put a knee into Rainey's back and handcuffed him. While English, Stanback, and Holyfield were escorting Rainey to his new cell, Rainey informed English that he wanted medical attention, but Rainey was not provided with medical attention within the next several minutes before the guards' shift changed. Less than an hour later, after the shift change, Rainey requested medical treatment from a non-defendant lieutenant, at which time that lieutenant escorted Rainey to the health care unit.

Rainey estimates that he received medical treatment within three hours of the incident. Prison records reflect that Rainey visited the medical facility at 10:30 p.m., where the nurse who evaluated him noted that his face and arms were bruised and that he reported that his ribs were sore. Rainey was given Tylenol and placed on a list for follow-up evaluation. The next day, November 7, a physician's assistant evaluated Rainey. The physician's assistant noted that Rainey had an abrasion on his left eye and abrasions on both elbows, prescribed Rainey fifteen-days' worth of ibuprofen, and ordered X-rays of his ribs and left orbital bone. Although the IDOC was unable to locate the X-rays, the X-ray requisition form showed no fractures.

Another inmate, Byron Willis, testified that during the November 6 encounter, he heard Rainey screaming and telling the officers that he wasn't resisting. Willis says that he saw Rainey taken out of his cell wearing only his boxers and that the officers "had him in the air" and were pinching him and pulling his hair. Joint Statement of Facts ("JSOF") Ex. B, Willis Dep. 17:7-19, ECF No. 98-2. Willis saw bruises on Rainey's neck and face after the encounter.

Rainey testified that a few days later, on November 14, English told him that she had someone to put Rainey in a cell with "to handle that business for her." Pl.'s Statement of Facts ("PSOF") ¶ 18, ECF No. 103. But English testified that she only ever interacted with Rainey during the one uneventful transfer to segregation on or around November 6 and otherwise did not know who Rainey was before this lawsuit. English also denies ever threatening Rainey.

But according to Rainey, English again arrived at Rainey's cell on November 22 and told him to pack up his property so that he could be moved to a new cell. This time, instead of being moved to a segregation unit, Rainey was being moved into a cell with Eugene Andrews, whom Rainey knew had a reputation for fighting and sexually assaulting other inmates. Andrews testified

that English and Stanback had given Andrews extra food to attack other inmates, and that Andrews often had to get new cellmates after getting into physical confrontations with them.

Rainey testified that knowing Andrews' reputation, he refused to enter the cell, at which time English kicked, and the other correctional officers punched and kicked, Rainey to force him into the cell. Rainey estimates that English and the other correctional officers kicked him roughly 10 to 15 times. After Rainey fell into the cell, English pepper sprayed Rainey twice. Rainey claims that as a result of the incident, his left shoulder felt out of place, and his ribs, back, and neck were injured.

Rainey was then taken to the showers, where he washed his eyes, which "helped a little," but "it really didn't do a good job" because he was still handcuffed. JSOF Ex. E, Rainey Dep. 71:6-16, ECF No. 98-5. While in the shower, Rainey asked unidentified correctional officers for medical attention, but his request was denied. Later that day, after asking for medical attention from a non-defendant lieutenant, Rainey was seen by a nurse, who put him on sick call for medical evaluation the following day, November 23. Rainey was evaluated for shoulder and wrist pain on November 23 and was found to have "no signs of injury," but the medical professional who evaluated him placed him on sick call to be seen by a medical doctor, who saw him on November 25. JSOF ¶ 47, ECF No. 98. The medical doctor who evaluated Rainey noted that he saw "no signs of trauma" and prescribed Rainey with Tylenol. JSOF ¶ 48. Rainey testified that he experienced pain in his body and face as a result of the assaults.

When evaluating the motions for summary judgment, the Court must construe all facts and draw reasonable inferences "in the light most favorable to the non-moving party." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 977 (7th Cir. 2014). "Summary judgment is appropriate where

there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citations omitted).

Rainey has asserted four claims against each defendant. He has asserted an excessive force claim and a deliberate indifference claim against each defendant as to the November 6 incident, and he has asserted an excessive force claim and a deliberate indifference claim against each defendant as to the November 22 incident. For purposes of Rainey's motion, the defendants' denials of ever having used force against Rainey must be accepted as true. And for purposes of the defendants' motion, evidence showing that the defendants assaulted Rainey and then did nothing to ensure that Rainey received medical treatment must be accepted as true.

I. **Excessive Force**

Rainey moves for summary judgment on his claims that the defendants violated his Eighth Amendment rights by using excessive force against him when transporting him between cells on November 6 and November 22, 2014. The Eighth Amendment forbids "unnecessary and wanton infliction of pain against prisoners." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citations omitted). The "core requirement" of an Eighth Amendment excessive force claim is that the defendants "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal quotation marks omitted).

Rainey argues that summary judgment should be granted on his excessive force claims because the defendants' self-serving testimony that they did not punch or kick Rainey is uncorroborated and not credible. But "uncorroborated, self-serving testimony, if based on personal knowledge or firsthand experience, may prevent summary judgment against the non-moving party, as such testimony can be evidence of disputed material facts." *Montgomery v. American Airlines,*

5

*Inc.*, 626 F.3d 382, 389 (7th Cir. 2010) (cleaned up). Offering self-serving testimony "is an acceptable method for a non-moving party to present evidence of disputed material facts" so long as it "meets the usual requirements for evidence presented on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial." *Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 460 n.1 (7th Cir. 2014) (citation omitted). "Deposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving. As we have repeatedly emphasized over the past decade, the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (internal citation omitted)[1]; *see also McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 814 (7th Cir. 2017) (Seventh Circuit "cases for at least the past fifteen years teach that self-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment.") (internal quotation marks omitted).

The defendants offer accounts of Rainey's November 6 transfer between prison cells that differ sharply from Rainey's account, and they appear to deny that they were involved in the events of November 22 altogether. The defendants also deny kicking, punching, or threatening Rainey at any time. These denials go to the "core requirement" of an excessive force claim. *See Hendrickson*, 589 F.3d at 890. The defendants have personal knowledge about whether they assaulted Rainey,

---

[1] Rainey cites a 2001 case for the proposition that "Defendants' uncorroborated and self-serving testimony is insufficient to create a genuine issue of material fact." *See* Pl.'s Mem. 11, ECF No. 102 (citing *Howell v. Bd. of Trustees of Univ. of Illinois*, No. 00 C 3402, 2001 WL 740513, at *5 (N.D. Ill. June 28, 2001)). That principle has long-since been expressly abandoned by the Seventh Circuit. Indeed, one of the cases on which the court in *Howell* relied, *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 682 (7th Cir. 1999), was explicitly overruled by *Hill*, 724 F.3d at 967 n.1.

6

and Rainey has not asserted any basis upon which their testimony should be excluded as inadmissible. Where there are significant fact disputes about whether the defendants used ***any*** force against Rainey, the Court certainly cannot conclude as a matter of law that the defendants "used force . . . maliciously and sadistically to cause harm" to Rainey. *See Hendrickson*, 589 F.3d at 890. Accordingly, Rainey's motion for partial summary judgment on his excessive force claims is denied.

## II. Deliberate Indifference

The same foundational fact dispute defeats the defendants' motion for partial summary judgment on the deliberate indifference claims against English, and on the deliberate indifference claim against Stanback as to the alleged November 6 assault. To prevail on an Eighth Amendment claim of deliberate indifference to a serious medical need, an inmate must show that "he faced a substantial risk due to an objectively serious medical condition and that [the defendants were] deliberately indifferent to that risk." *Palmer v. Franz*, --- F.3d ----, No. 18-1384, 2019 WL 2610943, at *2 (7th Cir. June 26, 2019). A medical condition is objectively serious if it "is so obvious that even a lay person would perceive the need for a doctor's attention. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Id.* (citation omitted). To show that the defendants deliberately disregarded the risk of harm, an inmate need not "establish that [the defendants] intended or desired the harm that transpired. Instead, it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Id.* "A factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* (brackets and citation omitted). "If a prisoner

is writhing in agony," guards must "make an effort to find . . . some medical professional." *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 941 (7th Cir. 2015) (emphasis omitted).

Accepting Rainey's account of the events as true, the defendants disregarded the substantial risk of harm that the alleged November 6 assault inflicted on Rainey, and English disregarded the substantial risk of harm that the alleged November 22 assault inflicted on Rainey. A reasonable jury could conclude that a lay person, after participating in or witnessing the violent attacks on Mr. Rainey, "would perceive the need" for Rainey to receive a doctor's attention. *Palmer*, 2019 WL 2610943, at *2. The nature of the alleged assaults—not just physical manifestations of symptoms or requests for medical attention—placed the defendants on notice that there was a substantial risk that Rainey had suffered injuries that could result in "further significant injury or unnecessary and wanton infliction of pain if not treated." *Palmer*, 2019 WL 2610943, at *2. This is not a terribly high bar to clear; a toothache can suffice. *See, e.g.*, *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (pain of intensity similar to that faced when suffering from tooth decay can constitute serious medical condition).

As Rainey describes it, during the first assault three correctional officers allegedly punched and kicked Rainey all over his face, head, and body. During the second assault, about two weeks later, correctional officers again allegedly punched Rainey and kicked him roughly 10 to 15 times. Repeated punches and kicks to the head and body, such as those Rainey describes, present the substantial risk of serious injury, including internal injury such as a concussion. While it is true that minor bruising or swelling may not alone demonstrate that an inmate has a serious medical need, *Pinkston v. Madry*, 440 F.3d 879, 891 (7th Cir. 2006) (citation omitted), a reasonable jury could conclude that medical attention following the abuse alleged here was self-evident. *Palmer*,

2019 WL 2610943, at *2 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").

Rainey claims that, after the November 6 encounter, he requested medical treatment from English when in the presence of Stanback, and that after the November 22 encounter, he requested medical treatment from unidentified correctional officers. But the lack of an express request would not absolve the defendants where they knew that Rainey was "writhing in agony," as they must have to the extent they were present during the alleged assaults. *Dobbey*, 806 F.3d at 941.

There is no evidence that the defendants made any effort to have a medical professional evaluate Rainey after these (alleged) beatings. Nor is there any evidence to suggest that the defendants declined to seek medical attention for Rainey because they knew that others were going to secure medical attention for him in short order. Although Rainey eventually received medical attention on each occasion, "even brief, unexplained delays in treatment may constitute deliberate indifference" if the delays "unnecessarily prolonged [the plaintiff's] pain." *Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015). Rainey testified that he was in pain as a result of the assaults, he was prescribed Tylenol, and an ordinary lay person could perceive that Rainey would be in serious pain after enduring the kind of beatings Rainey described. Rainey has therefore produced sufficient evidence from which a jury could conclude that the defendants did not take adequate action to ensure that Rainey received prompt medical treatment after the alleged November 6 assault, and that English did not take adequate action to ensure that Rainey received prompt medical treatment after the alleged November 22 assault. Rainey has not pointed to evidence, however, that Stanback

was present during or otherwise aware of the alleged November 22 assault.[2] Accordingly, Rainey's deliberate indifference claim against Stanback arising from the November 22 assault must fail.

\* \* \* \* \*

For the reasons stated above, Rainey's motion for partial summary judgment is denied, and the defendants' motion for partial summary judgment is denied in part and granted in part.

Dated: July 16, 2019

John J. Tharp, Jr.
United States District Judge

---

[2] Of course, if Stanback was not involved in the November 22 incident, then he could not have used excessive force against Rainey during that incident. But the defendants have moved for summary judgment only on the deliberate indifference claims, not on the excessive force claims.